259 So.2d 600 (1972)
Gloria CARMOUCHE, widow of Aloe J. OCMOND, Jr.
v.
Ruth D. ESERMAN, wife of and Steven Eserman, et al.
No. 4856.
Court of Appeal of Louisiana, Fourth Circuit.
March 21, 1972.
Rehearing Denied April 4, 1972.
Writ Refused May 11, 1972.
Robert I. Broussard, Gretna, for plaintiff-appellant.
Bruce J. Borrello, New Orleans, for defendant-appellee, Stanley Home Products Corp.
Before CHASEZ, STOULIG and BAILES, JJ.
STOULIG, Judge.
Plaintiff filed this action sounded in tort, seeking damages for the death of her husband, who was killed in an automobile accident allegedly caused by the negligence of the defendant Ruth D. Eserman. At the time of the incident Mrs. Eserman was purportedly acting within the course and scope *601 of her employment and/or on a mission for the use and benefit of Stanley Home Products Corporation (hereinafter sometimes referred to as Stanley). A motion for summary judgment was filed by Stanley alleging that, according to the deposition of Mrs. Eserman and other affidavits and exhibits filed into the record, there was no dispute as to the material fact that at the time of the accident Mrs. Eserman was neither employed by Stanley nor on a mission for its use and benefit. After a hearing on the matter the lower court maintained the motion and dismissed Stanley as a party defendant. From that judgment, plaintiff has taken this devolutive appeal.
The issues before this tribunal are whether the trial court acted properly in concluding that there was no genuine issue of material fact making summary procedure appropriate, and, further, whether under the submitted facts, defendant was entitled to judgment as a matter of law.[1]
The documents introduced in support of the motion consisted of the affidavit of Stephen C. Reville, secretary of Stanley Home Products Corporation, and the deposition of Mrs. Eserman. The opposing affidavit of Grace Taylor Pagano was filed on behalf of plaintiff.
The affidavit of Reville indicated that on January 9, 1970, Mrs. Eserman entered into a "dealer's agreement" with Stanley under which she was to sell for her own account merchandise which she purchased from them. She was paid no commission or wages, her profit consisting of the difference between the retail and wholesale prices of the products she sold. She was not required to keep records of her sales and worked whatever hours she chose. Attendance at sales meetings was entirely voluntary. Reville further attested that she was entitled to no company benefits and that there was no group insurance plan covering Mrs. Eserman. No social security or federal, state or municipal income taxes were withheld for her account. She was under no territorial restriction regarding her sales activities, and she was not required to sell the products at a fixed price. Mrs. Eserman paid all of her own expenses and was given no automobile allowance of any kind. Nor was she provided any office space by Stanley. She had no sales quota, and was not restricted to the exclusive sale of Stanley products.
Mrs. Eserman's deposition confirms in large part the affidavit of Reville. She stated she had no quota to meet, was required to furnish no invoices, was paid no commission or salary and her profit consisted only of the difference between the purchase and the selling price of the goods. Accordingly, no social security or income tax was withheld from her. She was not required to furnish customers' names to Stanley, and ordered all products in her name. She was not provided any office space by Stanley. Nor was she required to work any particular number of hours per day or per week, or restricted to any particular geographic location. Mrs. Eserman stated that she was given no expense allowance, but paid her own expenses, including that of operating her automobile. At no time did she ever discuss with Stanley retirement benefits, and was not covered by any life, accident, or hospitalization insurance.
Mrs. Eserman further stated that she arranged parties at which she demonstrated Stanley products; these parties were arranged at her convenience, and there was no requirement by Stanley that she have *602 any particular number of them in any given time. The party to which Mrs. Eserman was on her way the night of the accident had been set up by Carol Zito, a unit manager for Stanley. Mrs. Zito was to meet Mrs. Eserman at the party to, in Mrs. Eserman's words, "make sure that what I was doing was right."
The only document filed in opposition to the motion for summary judgment was the affidavit of Grace Taylor Pagano, who worked for Stanley a period of approximately three years, ending in August of 1967. Mrs. Pagano stated that she was furnished a catalogue by Stanley and required to charge the prices therein set forth, and further required to produce one order per month. Bonuses were offered in the form of trips and prizes and she had been encouraged by the unit manager to make a certain quota so that she (the unit manager) could be successful in winning a prize which had been offered by Stanley. Mrs. Pagano stated that she was given a $10 bonus for each new lady she recruited for Stanley. Her relationship with Stanley was not for any specified period of time, and she could terminate it without being subjected to any legal action by Stanley.
Mrs. Pagano stated that the unit manager of Stanley instructed them in the manner in which the sales "parties" were to be conducted and that to her knowledge these same procedures and methods had been followed by Stanley since the termination of her relationship with them.
It is the opinion of this court that the foregoing affidavit and deposition filed by mover for summary judgment and the countervailing affidavit of the respondent do not present any factual contradictions only conflicting conclusions based upon these facts. More specifically, whether the character of the relationship with Mrs. Eserman was such as would render Stanley Home Products Corporation vicariously liable for the negligence of Mrs. Eserman which caused the death of plaintiff's husband is an issue of law as opposed to a genuine issue of material fact. Thus, we conclude after reviewing the respective affidavits and depositions filed that the posture of this case is such that the issue of Stanley Home Products' liability would admit of adjudication by summary judgment.
An examination of the jurisprudence has convinced us that the principles of law enunciated in Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968), are apposite to the issue of Mrs. Eserman's legal relationship with Stanley Home Products and therefore dispositive of the question of vicarious liability urged by the plaintiff. In that opinion, the Court stated at pages 906, 907:
"A master or employer is liable for the tortious conduct of a servant or employee which is within the scope of authority or employment, but a principal is not liable for the physical torts of a non-servant agent.

"A principal is not liable for the harm caused by negligent physical activities of a non-servant agent. * * *' Seavey, Law of Agency, § 91, I, p. 161.
"A principal is not liable for physical harm caused by the negligent conduct of a non-servant agent, during the performance of the principal's business * * *.' Restatement of the Law Second, Agency 2d, sec. 250, p. 549.
* * * * * *
"* * * `Servant' must be interpreted as that particular kind of agent who has a very close economic relation to, and is subject to very close control by, the principal. A servant is one who offers his personal services for a price. He is an integral part of his employer's business and must submit to the control of his physical conduct as well as of his time. A non-servant agent contributes to the business of his employer, but he is not such a part of it that his physical acts and the time to be devoted to the business are subject to control."
*603 The deposition of Mrs. Eserman and the affidavit of Stephen Revillethe relevant portions of which have been relatedleave little doubt that Mrs. Eserman did not occupy the status of employee, but, rather, was the nonservant agent of Stanley Home Products Corporation. Neither her physical activity nor her time was subjected to control of Stanley. The fact that the party to which Mrs. Eserman was going on the night of the accident was to be supervised by Mrs. Zito, a unit manager of Stanley, is not sufficient to alter the status occupied by Mrs. Eserman. Nor does the affidavit of Mrs. Grace Taylor Pagano set forth any facts which would change the opinion of the court.
For these reasons, the decision of the lower court granting summary judgment in favor of defendant and dismissing plaintiff's suit against them is affirmed.
Affirmed.
NOTES
[1] Article 966 of the Louisiana Code of Civil Procedure reads in pertinent part as follows:

"The motion for summary judgment shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the day of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law."