# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 06-223

JACQUELINE BAZILE

VERSUS

NESTLÉ USA, INC., ET AL.

**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2004-6626-B
HONORABLE WILLIAM BENNETT, DISTRICT JUDGE

**********

**ULYSSES GENE THIBODEAUX
CHIEF JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and J. David Painter, Judges.

**PAINTER, JUDGE, CONCURS AND ASSIGNS WRITTEN REASONS.**

**REVERSED AND RENDERED**.

**Stephen C. Resor**
**Sullivan, Stolier & Resor**
**909 Poydras Street - #2600**
**New Orleans, LA 70112**
**Telephone:  (504) 561-1044**
**COUNSEL FOR:**
    **Defendant/Appellee - Dolgencorp, Inc.**

**Jason R. Bonnet**
**Kendra Leigh Duay**
**Leake & Anderson**
**1100 Poydras Street - Suite 1700**
**New Orleans, LA 70163**
**Telephone:  (504) 585-7500**
**COUNSEL FOR:**
    **Defendant/Appellant - Nestlé USA, Inc.**

**Cory Paul Roy**
**P. O. Box 544**
**Marksville, LA 71351**
**Telephone:  (318) 240-7800**
**COUNSEL FOR:**
      **Plaintiff/Appellee - Jacqueline Bazile**

THIBODEAUX, Chief Judge.

This case involves the assessment of damages against a private corporation for failure to fund a settlement within thirty days. The plaintiff, Jacqueline Bazile, sued Nestlé USA, Inc. (Nestlé) after allegedly finding worms in a candy bar manufactured by Nestlé. No insurance companies were involved in the suit. The parties settled the matter for $1,500.00, and the settlement was funded approximately sixty-four days later. However, when the settlement was not funded within thirty days, Bazile filed a motion for enforcement of the settlement and for bad faith damages. The trial court assessed $5,000.00 in bad faith damages against Nestlé pursuant to La.R.S. 22:1220, which governs an insurer's duty to fund a settlement within thirty days from settlement. It is from this judgment, and from a judgment denying a new trial, that Nestlé appeals. We reverse the judgment for the bad faith penalty against Nestlé. It is not an "insurer" within the meaning of La.R.S. 22:1220.

I.

## ISSUES

We must decide whether the trial court erred in applying the thirty-day time restriction of La.R.S. 22:1220 to a settlement not involving an insurer.

II.

## FACTS AND PROCEDURAL HISTORY

On July 12, 2004, Bazile sued the Nestlé corporation and Dolgencorp, Inc. after allegedly discovering worms in a candy bar that she had purchased from a Dollar General store in December 2003. Dolgencorp, Inc. was subsequently dismissed. No insurance companies were named in the suit or involved in the litigation.

On December 6, 2004, Nestlé accepted the counteroffer from Bazile to settle the suit for $1,500.00 and faxed a letter to Bazile confirming the amount. The letter agreed to "pay plaintiff $1,500, inclusive of medical specials and court costs, in exchange for a full and final dismissal of all claims against Nestlé USA, Inc." The letter also requested a tax identification number (TIN) from Bazile's attorney for the funding of the settlement. The parties had previously agreed that Nestlé would pay the court costs *in addition to* the settlement amount. Therefore, this letter of December 6, 2004, inaccurately reflects that the amount of $1,500.00 *includes* and settles all damages and all court costs. Bazile did not respond to this mistake but later argued that the settlement was confected in this letter of December 6, 2004. Bazile also did not respond to the request for the TIN.

On December 8, 2004, Nestlé forwarded a Receipt and Release and Motion to Dismiss and again requested the TIN for the settlement. Bazile did not respond to this correspondence, even though the enclosed dismissal again failed to reflect that court costs would be paid by Nestlé.

As of January 7, 2005, Nestlé had not received the signed settlement documents. On this date, Nestlé forwarded correspondence requesting the executed copies of the Receipt and Release and also requesting the TIN for a third time.

On January 12, 2005, Bazile wrote Nestlé, acknowledging the January 7, 2005 correspondence and enclosing the executed Receipt and Release. However, at this time Bazile requested a *revised* Motion to Dismiss that reflected the parties' agreement that all costs would be paid by Nestlé. Counsel for Bazile did not ask about the settlement check, nor did he provide his TIN as requested for the settlement. Counsel for Nestlé obtained the TIN of counsel for Bazile by phone and wrote it on

the January 12, 2005 correspondence. Nestlé would later argue that the settlement was confected no earlier than January 12, 2005.

On January 21, 2005, Bazile wrote Nestlé, enclosing the executed revised Motion to Dismiss reflecting that all costs would be borne by Nestlé.

On January 27, 2005, counsel for Nestlé inadvertently filed the Motion to Dismiss before funding the settlement. The record indicates that the Nestlé corporation's third-party claims administrator transferred the file to another office and that this transfer contributed to miscommunications between the attorney's office and the claims office and contributed to some delay in confecting the settlement check.

On January 29, 2005, Bazile filed a motion to enforce the settlement and requested damages for bad faith handling of the settlement pursuant to La.R.S. 22:1220. The motion to enforce was ostensibly filed to protect Bazile's interests in light of the premature filing by Nestlé of the motion to dismiss.

On February 4, 2005, Nestlé cut the settlement check for $1,500.00 and, upon receipt of same, counsel for Nestlé sent the check by Federal Express to counsel for Bazile. Accompanying the check was correspondence dated February 7, 2005. The correspondence contained an apology for the premature filing of the Motion to Dismiss before sending the settlement check which prompted the filing of the motion to enforce. The correspondence also confirmed in writing a verbal agreement wherein counsel for Bazile agreed to withdraw the motion to enforce upon receipt of the settlement check. At the hearing, counsel for Bazile did not deny the agreement to withdraw the motion to enforce but attempted to discount it by indicating that there was no proof of the agreement.

On April 26, 2005, Bazile filed a motion to reopen the case for submission of additional evidence. Counsel for Bazile asserted that he hand wrote

3

a response on Nestlé's first offer to settle wherein Bazile made the counteroffer of $1,500.00, and that this letter was inadvertently omitted from the exhibits. The trial court granted the motion, and after a hearing on May 16, 2005, the court accepted the letter with the handwritten response.[1] While there is confusion in the record regarding the date of this letter with the handwritten response, the letter is of no moment. The December 6, 2004 letter from Nestlé, which is in the record, without any response, *confirms* the previous counteroffer of $1,500.00, and there are no allegations of a confected settlement prior to December 6, 2004.

The trial court found in favor of Bazile and assessed a $5,000.00 penalty against Nestlé pursuant to La.R.S. 22:1220 for failure to fund the settlement within thirty days from December 6, 2004.

On June 27, 2005, Nestlé filed a motion for a new trial based upon La.Code Civ.P. arts. 1971 and 1972(1), on the grounds that the judgment was contrary to the law and the evidence. In its supporting memorandum, Nestlé argued for the first time that it was not an insurer and, therefore, not subject to La.R.S. 22:1220 or its thirty-day limitation on funding a settlement. Nestlé has continued to maintain that, despite the inapplicability of the statute, the settlement was funded timely under La.R.S. 22:1220, where the settlement was not confected until January 12, 2005, and the settlement was funded on February 9, 2005. Nestlé further argues that La.R.S. 22:1220 is inapplicable because Nestlé never *knowingly* held the check.

_____

[1]This letter does not appear in the record.

# III.

## LAW AND DISCUSSION

**Whether Nestlé Is an Insurer under La.R.S. 22:1220**

Nestlé contends that the trial court erred in applying the thirty-day time restriction of La.R.S. 22:1220 to the Nestlé settlement in this case where Nestlé is not an insurer under the meaning of that statute. We agree. Louisiana Revised Statutes 22:1220 is a penal statute and must be strictly construed. *Bennett v. State Farm Ins. Co.*, 03-1195 (La.App. 3 Cir. 3/24/04), 869 So.2d 321. It provides in pertinent part:

> **La.R.S. 22:1220. Good faith duty; claims settlement practices; cause of action; penalties**
>
> A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
>
> B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
>
> > (1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
> >
> > (2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
> >
> > (3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.
> >
> > (4) Misleading a claimant as to the applicable prescriptive period.

5

(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.

. . . .

C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

Nestlé cites *Thibodeaux v. Stapp Towing Co., Inc.*, 96-1511, 96-1514 (La.App. 3 Cir. 8/27/97), 702 So.2d 693, where the trial court awarded punitive damages to the plaintiffs under La.R.S. 22:1220, after the defendant towing company's vessel drifted into the plaintiffs' pleasure craft and dock. In reversing the trial court, a panel of this court held that the statute imposing a duty of good faith and fair dealing upon an insurer and prescribing penalties for violating this duty did not permit an award of punitive damages against the defendant, who was not an insurer. More specifically, after making it clear that the award of negligence damages was not at issue, but rather the only issue was whether the trial court erred as a matter of law in assessing a penalty under La.R.S. 22:1220, the panel articulated as follows:

The gist of defendant's argument is that because it is not an insurer, it should not have been held liable for punitive or exemplary damages, as the penal provisions of La.R.S. 22:1220[2] explicitly imposes [sic] both the duty and the penalties only against insurers. As defendant points out, La.R.S. 22:1212 defines the term "insurer" as follows:

§ 1212. Definitions

---

[2]Louisiana Revised Statutes 22:1220 was amended by 2006 La. Acts No. 12, § 1; however, the amendment does not affect the issues addressed in this opinion.

6

C. "Insurer" means any person, reciprocal exchange, interinsurer, Lloyds insurer, fraternal benefit society, or any other legal entity engaged in the business of insurance, including insurance agents, insurance brokers, surplus lines brokers, and insurance solicitors. Insurer shall also mean medical service plans, hospital service plans, health maintenance organizations, and prepaid limited health care service plans. For the purposes of this Part, these foregoing entities shall be deemed to be engaged in the business of insurance.

In view of the fact that there is no question but that defendant is not and never has been alleged to be an insurer within the purview of La.R.S. 22:1212, we are compelled to reverse the judgment of the trial court. When a statutory or codal provision enacted by the Louisiana Legislature is clear and unambiguous, its letter shall not be disregarded under the pretext of pursuing its spirit; rather, the law is to be applied as written and no further interpretation may be made in search of the intent of the legislature. La.Civ.Code art. 9; La.R.S. 1:4. La.R.S. 22:1220, particularly when read in conjunction with La.R.S. 22:1212(C), only imposes upon *insurers* the duty to settle upon pain of penalties, and the trial court erred in holding to the contrary, for the law of Louisiana is clear insofar as it provides that a party cannot recover damages for failure to settle a case, except in the limited circumstances provided by statute. *Yoes v. Shell Oil Co.*, 95-12 (La.App. 5 Cir. 5/10/95); 657 So.2d 241, *writ denied*, 95-2087 (La. 11/17/95); 663 So.2d 714; *Guillory v. Gulf South Beverages, Inc.*, 506 So.2d 181 (La.App. 5 Cir. 1987).

In this case, plaintiffs can allude to no legal authority by which defendant, neither an insurer nor a health provider, can be held answerable for more than the damages occasioned by its delict.

*Id*. at 694.[3]

Nestlé also cites *Rawls v. City of Bastrop*, 38,449 (La.App. 2 Cir. 5/12/04), 873 So.2d 934. In this property damage case, the plaintiffs filed suit against the City of Bastrop, claiming that paint overspray from the negligent painting of a

---

[3]Judge Thibodeaux dissented in *Thibodeaux*. He has now abandoned his contrary position.

municipal building damaged their vehicle. The trial court found the city liable for damages, penalties, and attorney fees. The city appealed and argued that the trial court erred in awarding inappropriate damages and in awarding penalties and attorney fees. The appellate court affirmed the damage award, but reversed the award of penalties and attorney fees, stating as follows:

> The City's second issue on appeal is whether the trial court erroneously awarded penalties and attorney fees. On this issue, the City argues that it is a member of the Louisiana Municipal Association Risk Management Agency ("LMARMA") and part of a self-insurance fund. The City further argues that there is a distinct difference between a regular insurance company and the LMARMA. In support of this argument, the City cites the provisions of La.R.S. 33:1345, which state in pertinent part that an interlocal risk management agency is not an insurance company or an insurer under the laws of Louisiana, and that the development and administration by such agency of one or more group self-insurance funds shall not constitute doing insurance business.
>
> In opposition to this argument, the plaintiffs assert that the record in this matter does not reflect that the City is anything other than a self-insured entity. They also argue that the trial court did not indicate that the City was an insurance company, but that the court simply likened the City to any other self-insured company, and that because of the untimely manner in which the City satisfied its liability in this case, the court concluded it was appropriate to sanction the City as though it were an insurance company. In this regard, the plaintiffs argue that the duties of good faith and fair dealing incumbent upon insurers pursuant to the provisions of La.R.S. 22:658 and 22:1220 should also apply to self-insurers.

*Id*. at 937.

After reviewing the statutory provisions, the court in *Rawls* disagreed with the plaintiffs, quoting La.R.S. 22:1220(A) and (C) and stating as follows:

> The above-quoted provisions are found in Part 26 of Chapter 1 of the Louisiana Insurance Code. Part 26, entitled "Unfair Trade Practices," is designed to regulate the trade practices in the business of insurance, in accordance with federal law, by defining or providing for

8

the determination of all acts, methods, and practices which constitute unfair methods of competition and unfair or deceptive acts and practices in this state, and to prohibit the same. La.R.S. 22:1211.

*Id*. at 938.

After quoting the definition of an insurer pursuant to La.R.S. 22:1212(C), as did this court in *Thibodeaux*, the *Rawls* court stated as follows:

> As we held in *Block v. St. Paul Fire & Marine Ins. Co.*, 32,306 (La.App. 2d Cir. 9/22/99), 742 So.2d 746, statutes requiring timely payment of claims and imposing a duty of good faith and fair dealing are penal in nature and, therefore, must be strictly construed. Even without the definition of "insurer" quoted above, a strict interpretation of the word "insurer" would not include the City in the instant case. . . . [T]he above-quoted definition of "insurer" plainly shows that the legislature intended to include only those entities engaged in the *business* of insurance; the City is not in the insurance business. Accordingly, the City is not an "insurer" for purposes of La.R.S. 22:1220.
>
> Because the penal provisions of this statute must be strictly construed, they cannot be applied by analogy to the City when the City does not fall within the plain reading of the words of the statute. *Thibodeaux v. Stapp Towing Co.*, 96-1514 (La.App. 3d Cir. 8/27/97), 702 So.2d 693. Moreover, because the City is not an insurer, we also find inapplicable the penalty and attorney fee provisions of La.R.S. 22:658.

*Id*. at 939.

Accordingly, based upon the foregoing, we find that the trial court erred as a matter of law in finding that Nestlé was an insurer under Title 22 and in assessing a $5,000.00 penalty under La.R.S. 22:1220 for failure to fund a settlement within thirty days. Because we find La.R.S. 22:1220 inapplicable, we need not address whether the settlement was reduced to writing on December 6, 2004, as Bazile argues, or on January 12, 2005, as Nestlé argues.

9

Nestlé has further contended that the trial court erred in finding that the thirty-day limitation on funding the Nestlé settlement began to run before counsel for Bazile supplied his TIN to counsel for Nestlé.   Again, since we find that La.R.S.22:1220 is inapplicable to Nestlé in the present case, it is likewise not necessary to address the issue of the TIN or the issue of the denial of Nestlé's motion for a new trial.

IV.

## CONCLUSION

Based upon the foregoing, the judgment of the trial court is reversed. Costs of this appeal are to be borne by plaintiff-appellee, Jacqueline Bazile.

**REVERSED AND RENDERED.**

**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**06-223**

**JACQUELINE BAZILE**

**VERSUS**

**NESTLÉ USA, INC., ET AL.**

Painter, Judge, concurs.

Were it possible under the law, I would affirm the trial court's judgment assessing Nestlé with penalties. However, the law as written allows Nestlé avoid the consequences of its failure to pay by self-insuring. Under the existing law no result other than that reached by the majority is possible. Basically, the law provides no penalty where a self-insured defendant fails to pay a plaintiff after settlement. Even worse, if the defendant has a shadow insurer that does not appear on the surface, the same result can occur. In this case, there is no evidence that Nestlé is anything other than self-insured and La.R.S. 22:1220 must be strictly construed. It may be that this problem is one which should be corrected by the legislature. As a result, I concur in the result reached by the majority.